# UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

---

ANDREW KEISKER,

    Plaintiff

v.

HARTFORD LIFE AND
ACCIDENT INSURANCE COMPANY,

    Defendant

---

Civil Action No.   3:18-cv-261-CRS

***Electronically Filed***

## COMPLAINT

\*\*\*     \*\*\*     \*\*\*     \*\*\*

    Comes the Plaintiff, Andrew Keisker, by counsel, and for his cause of action against Defendant, states as follows:

### INTRODUCTION

1.    Plaintiff, Andrew Keisker ("Keisker"), brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  At issue is a refusal by Defendant, Hartford Life and Accident Insurance Company ("Hartford"), to pay Plaintiff rightfully owed long-term disability ("LTD") income benefits beyond March 27, 2017. Plaintiff has been unable to work since Decemer

1, 1995, at which time he was employed as a Utilization Coordinator. Benefits were paid uninterrupted for over 20 years until March 27, 2017, when Defendant abruptly terminated his benefits. As required by his LTD policy, Plaintiff filed an administrative appeal of Hartford's denial of his benefits. On appeal, Hartford upheld its decision to deny Keisker continued LTD benefits. Hartford's review and denial of Keisker's continued LTD benefits was biased, unreasonable, and against the weight of the medical evidence.

2. Plaintiff seeks a court order requiring Hartford to pay his past-due benefits and declare his right to future benefits for as long as he remains disabled. Plaintiff also seeks pre-judgment interest and attorneys' fees pursuant to ERISA § 502(g).

**PARTIES**

3. Plaintiff, Andrew Keisker is currently a resident of Louisville, Kentucky.

4. Defendant, Hartford Life and Accident Insurance Company is a corporation organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut. Hartford is registered and authorized to do business in the Commonwealth of Kentucky.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and 28 U.S.C. § 1331.

6. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. §1391(b).

## FACTS AND CLAIM FOR BENEFITS

7. Keisker worked full time as a Utilization Coordinator for Managed Care Programs, Inc. until his disability forced him to stop working effective December 1, 1995.

8. As a full-time employee, Plaintiff was covered by the Managed Care Programs, Inc., Group Disability Income Policy, No. 83090390 ("the Policy").

9. The Policy was issued and administered by Hartford.

10. When he became disabled, Plaintiff applied for LTD benefits under the Policy. Benefits were approved and paid uninterrupted for over 20 years.

11. In a letter dated March 28, 2017, Hartford notified Keisker that his LTD benefits were terminated, effective March 27, 2017.

12. Keisker filed a timely administrative appeal, as required by the Policy.

13. In a letter dated November 22, 2017 Hartford denied Keisker's appeal, reaffirming its previous decision to terminate his benefits.

14. Plaintiff continues to be disabled as defined by the Policy.

15. The Social Security Administration has determined Keisker totally disabled due to his conditions. Plaintiff continues to receive Social Security Disability benefits.

16. Plaintiff's treatment provider, Dr. Steven Goldstein, advised Hartford on multiple occasions that Keisker does not have the functional capacity to sustain employment at any occupational level.

17. Hartford sent Keisker for an Independent Medical Examination ("IME") with Dr. Ellen Ballard on January 30, 2017.

18. In her initial report, Dr. Ballard advised *"His prognosis for the future is fair. There is no indication that neuropathy that has been present since 1995 will have any improvement."* Dr. Ballard opined that Keisker would have the following restrictions and limitations:

> *He can sit for an hour, stand for 15 minutes, and walk for 15 minutes. He can lift and carry 10 pounds. He is capable of driving. He can climb a few stairs. He has poor balance. He cannot stoop and kneel for more than 10 minutes. He cannot crouch or crawl. He can reach across desk/shoulder level. He has difficulty handling, fingering things with his left hand.*

19. With no additional explanation or clarification, Dr. Ballard later amended her restrictions as follows:

> - *The claimant can sit for 1 hour at a time for a total of 4 hours per day.*
> - *The claimant can stand for .25 hours at a time for a total of 2 hours per day.*
> - *The claimant can walk for .25 hours at a time for a total of 1 hour per day.*
> - *The claimant can lift and carry up to 10 lbs. occasionally. The claimant can push/pull up to 15 pounds occasionally*
> - *The claimant can reach at waist level occasionally. The claimant can reach above shoulder level never.*
> - *The claimant can reach below waist level never.*
> - *The claimant can perform repetitive pushing and pulling never, fine handling occasionally, and gripping and grasping occasionally.*
> - *The claimant is capable of stooping, crouching, crawling, kneeling, bending at waist rarely.*
> - *Use of bilateral hands with regards to handle, finger, feel, keyboard, fine and gross manipulation, and repetitive hand movement occasionally.*

20. Based upon Dr. Ballard's amended restrictions, Julie Bird in Hartford's vocational department ran an Employability Analysis. Ms. Bird's Employability Analysis identified zero jobs within the "closest" or "good" match levels. The only

4

job Ms. Bird actually identified in her report was Surveillance System Monitor (DOT 379.367-010) and it was considered a "fair" match, which requires "develop[ing] a plan." Ms. bird noted one other occupation in the lowest "potential" category, but did not specifically identify this occupation in her February 28, 2017 report.

21.     On appeal, Keisker submitted a wealth of information supporting continued disability.

22.     Dr. Goldstein reviewed Dr. Ballard's IME report and advised as follows:

> *I disagree with the amended restrictions following the report that overstate the amount of time that Mr. Keisker is able to sit, stand, and walk. His physical condition only allows him to stand or walk for no more than 15-20 minutes at a maximum of a half hour at a time before the pain in his legs becomes so severe he has to sit or lie down. He also has trouble sitting in one position for more than 20-30 minutes before he needs to change positions, again needing to lie down. Mr. Keisker is incapable of holding a job working more than 4 hours/day due to the pain and fatigue associated with his neuropathy.*

23.     On August 10, 2017, Keisker submitted to a second IME conducted by Certified Independent Medical Examiner Dr. Bruce A. Guberman. After reviewing Keisker's medical records and performing an in-person examination, Dr. Guberman opined:

> *In my opinion, to a reasonable degree of medical probability, Mr. Keisker does not have the functional ability to continuously engage in full-time employment at any occupational level . . . All the claimant's reported symptoms are consistent with the objective findings as well.*

24.     Dr. Guberman advised that Keisker has the following restrictions and limitations:

> *In my opinion, he is not able to stand more than 15 to 20 minutes at a time or more than 3 hours in an 8-hour day. He is not able to*

> *sit for more than 20 minutes at a time without changing position. He should avoid uneven surfaces, heights, ladders and stairs. He is not able to use his hands for fine or manipulative activities, gripping or repeated activities. He also is not able to use his arms for overhead activities based on range of motion abnormalities of his shoulders. He also requires immediate access to restroom facilities because of his urinary urgency, frequency and incontinence. In my opinion, the claimant is able to lift, carry, push or pull objects weighing up to 10 pounds occasionally and no more than 5 pounds to negligible frequently. The claimant should be allowed to recline, rest and/or nap in a dark quiet area for one to three hours every afternoon.*

25. Vocational Expert and Rehabilitation Counselor Irene C. Mendelsohn, M.C., CRC performed a vocational evaluation and employability assessment on Keisker. Ms. Mendelsohn reviewed Keisker's disability claim file, medical records, and employment history. She also performed a labor market survey and personally interviewed Keisker. In her August 28, 2017 report, Ms. Mendelsohn advises that Keisker is not qualified to perform the occupation of Surveillance System Monitor as it exists in the current economy and Keisker is not employable as a Surveillance System Monitor or otherwise.

26. Keisker also advised Hartford that the 6th Circuit has determined the "*Surveillance-System Monitor job description*, which dates to the 1991 edition of the Dictionary of Occupational Titles, *is obsolete.*" *Mokbel-Aljahmi v. United Omaha Life Ins. Co.*, No. 16-2616, 2017 U.S. App. LEXIS 16587 (6th Cir. Aug. 28, 2017) *(citing Cunningham v. Astrue, 360 F. App'x 606, 616 (6th Cir. 2010).*

27. Without adequate explanation or justification, Hartford improperly discounted the medical opinions of treating physician Dr. Goldstein and IME physician Dr. Guberman. Instead, Hartford chose to rely on opinions expressed by two internal medical resources performing paper medical records reviews.

28. In its final denial, Hartford fails to address the significant vocational issues raised on appeal, including the continued viability of the Surveillance System Monitor occupation as it was applied to Keisker's claim.

29. Ms. Bird performed an updated Employability Analysis for Hartford on November 6, 2017. Once again, Ms. Bird identified 0 occupations within the "closest" level, 0 occupations within the "good" level, 1 occupation within the "fair" level", and 1 occupation within the "potential" level.

30. Surveillance System Monitor was again identified as the occupation within the "fair" level. This time, however, Ms. Bird identified the "potential" level occupation, Referral Clerk, Temporary Help Agency (DOT 379.367-010). Hartford cited both occupations in its final denial letter as occupations "deemed appropriate" for Keisker.

31. In both her original and updated evaluations, Ms. Bird states that she used OASYS to assess Keisker's employability and identified 0 jobs within either the "closest" or "good" level.

32. It states on the actual OASYS support page that only occupations identified within the "closest" and "good" levels are considered viable for skills transfer searches. Occupations identified within the "fair" and "potential" levels are used for career exploration. See http://www.skilltran.com/index.php/support-area/product-help/oasys-product-help/211-tsa-oasys.

33. Hartford displayed a clear bias in its denial of Plaintiff's claim for benefits. The decision to deny Keisker's continued disability benefits is the result, at least in part, of the conflict between its fiduciary obligations to plan participants when

determining claims under the Plan and its interest in maximizing its own profitability.

34. Without adequate explanation or justification, Hartford improperly ignored strong supportive evidence of continued disability from Keisker, his treatment providers, an IME physician, and a vocational expert.

35. Hartford made unreasonable assumptions based on the evidence, made unsupported factual determinations, and wrongfully denied Keisker's claim for benefits.

36. Hartford's decision to deny Keisker's benefits was arbitrary and capricious, erroneous and in breach of its contractual obligations.

37. Hartford's review of Plaintiff's continued eligibility for benefits was improper and fails under any standard of review.

38. Keisker has fulfilled all conditions for the receipt of benefits under the Policy and has presented more than sufficient evidence of his continued disability to Hartford.

39. Keisker has exhausted his administrative remedies.

40. Keisker is entitled to payment of monthly benefits retroactive from March 27, 2017, the first day benefits were not paid, through present. These benefits should be continued as long as Plaintiff remains disabled in accordance with the terms of the Policy.

41. Keisker is entitled to attorney fees and costs pursuant to 29 U.S.C. §1132(g)(1).

**REQUEST FOR RELIEF**

Wherefore, Plaintiff respectfully requests this Honorable Court enter judgment in his favor and against Defendant and provide the following relief:

1. Payment of all Long Term Disability benefits past due;

2. Pre and post judgment interest;

3. For an Order finding Plaintiff to be disabled and reinstating his Long Term Disability insurance benefits;

4. For the attorney fees and expenses Plaintiff has incurred for enforcing his ERISA rights;

5. For his costs herein expended; and,

6. For any and all other equitable relief Plaintiff is entitled to under ERISA;

7. For any other relief that may be equitable under the circumstances or to which Plaintiff may appear entitled.

/s/ Joshua Erik Abell
Joshua Erik Abell. Esq.
Abell & Capitan Law, PLLC
6011 Brownsboro Park Blvd.
Suite A
Louisville, KY 40207
502-230-4659
Erik@longtermdisabilitylawyers.com
*Counsel for Plaintiff*